**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **PHONG VANG,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **CAUSE NO. EP-26-CV-117-KC** |
| | § | |
| **MARY DE ANDA-YBARRA et al.,** | § | |
| | § | |
| **Respondents.** | § | |

**ORDER**

On this day, the Court considered Phon Vang's Petition for a Writ of Habeas Corpus

("Petition"), ECF No. 1.

**I.      BACKGROUND**

**A.      Arrival in the United States & Immigration Proceedings**

Vang is a citizen of Laos who has resided in United States for over thirty years.  *Id.*

¶¶ 52–53.  In 2003, an Immigration Judge issued a final order of removal.  *See id.* ¶ 55.

Although Vang believed he had been ordered removed to Laos, *see id.*, it appears that, although

he was ordered removed from the United States, he was granted deferral of removal to Laos,

Decl. Vanessa Martinez ("Martinez Decl.") ¶ 14, ECF No. 3-1.  Accordingly, Respondents were

unable to remove Vang to Laos and instead released Vang under an Order of Supervision

("OSUP").  *Id.* ¶ 16; Pet. ¶¶ 56–57.

**B.      2025 Re-Detention**

Over twenty years later, on January 6, 2026, immigration officials detained Vang again.

Martinez Decl. ¶¶ 15–17; Pet. ¶ 58.  Vang alleges that Respondents did not provide any notice of

their intent to revoke his supervision and no basis to justify his re-detention.  Pet. ¶ 59.  And that

the Government has neither made any efforts to obtain travel documents to Laos, nor identified any third country for removal.  *Id.* ¶¶ 60–63.  Vang alleges he did not commit any crimes or violate any conditions of his OSUP to warrant revocation.  *See id.* ¶¶ 57, 64.

### C.  Procedural History

On January 21, 2026, Vang filed a Petition for a Writ of Habeas Corpus, arguing that his detention is unlawful and asking the Court to order his immediate release.  *Id.* ¶¶ 73–99; *id.* at 21.  On January 22, the Court ordered Respondents to show cause why the Petition should not be granted.  Show Cause Order 2–3, ECF No. 2.  In answer to the Court's Show Cause Order, Respondents argued that that Vang's re-detention is lawful under 8 U.S.C. § 1231(a)(6) because "[t]here is no good reason to believe that removal to a third country in the reasonably foreseeable future is unlikely."  Resp. 8, ECF No. 3.  Respondents explained that Vang was re-detained on January 6, 2026, "to effectuate his deportation order due to ERO's determination that he could now be removed to a third country in the reasonably foreseeable future."  Martinez Decl. ¶ 17.  However, on January 21, ERO El Paso submitted a travel document request to Laos, not a third country, on Vang's behalf.  *Id.* ¶ 21.  It was only on January 26 that ERO El Paso, upon "a closer review," learned that Vang could not be deported to Laos pursuant to his 2003 grant of deferral from removal, and thus began pursuing third country removal.  *Id.* ¶¶ 22–23.

Respondents were thus given a month to provide a status report detailing (1) whether they submitted a completed travel document request for Vang internally, and if so, that date of submission; (2) whether a third country for removal had been identified, and if not, the expected timeline for identification and the countries considered; (3) if a third country was identified, whether a travel document request was submitted to that country, and if not, the expected

timeline for submission; and (4) if a travel document request was submitted, the date of submission and the expected timeline for approval.  Feb. 6, 2026, Order 2, ECF No. 4.

On March 6, Respondents filed a Status Report, ECF No. 5, informing the Court that, on February 2, Enforcement Removal Operations ("ERO") El Paso submitted a request for travel documents that would allow Vang to travel to Bangladesh for internal ERO approval.  Decl. Guadalupe J. Tello ("Tello Decl.") ¶¶ 4, 6, ECF No. 5-1.  Respondents stated that the travel document request was still under internal review and that there was no anticipated timeline for approval.  *Id.* ¶¶ 6–7.  They also informed the Court that ERO El Paso had requested that Vang be placed "on a list for third country deportation to consider additional countries."  *Id.* ¶ 5.

Thus, the Court ordered Respondents to provide another status report in one month, detailing (1) whether Vang's travel document request for Bangladesh was reviewed internally, and if not, the expected timeline for review; (2) if the travel document request was approved internally, whether the request was submitted to Bangladesh, and if not, the expected timeline for submission; (3) if the travel document request was submitted to Bangladesh, whether it was approved, and if not, the expected timeline for approval; (4) whether a third country, other than Bangladesh, was identified for removal, and if not, the expected timeline for identification and the countries considered; (5)  if another country was identified, whether a travel document request was submitted to that country, and if not, the expected timeline for submission; and (6) if a travel document request was submitted, the date of submission and the expected timeline for approval.  Mar. 9, 2026, Order 2, ECF No. 6.  Respondents were cautioned that the Court would not look favorably on their failure to submit the travel document request to Bangladesh by the deadline to file a status report.  *Id.*

Respondents now inform the Court that Vang's travel document request to Bangladesh is still pending internal review with ERO and thus has not been submitted to Bangladesh. *See* 2d Status Report ¶¶ 1–3, ECF No. 10. They do not provide any anticipated timeline for the internal review of Vang's travel document request or submission of that request to Bangladesh. *See generally id.* They do not explain why, over two months after submitting the travel document request for internal approval, they still have not submitted that request to Bangladesh. As for identification of other third countries for Vang's removal, Respondents state that no countries have been identified and they provide no anticipated timeline for such identification. *Id.* ¶¶ 4–6.

## II.    ANALYSIS

Vang seeks a writ of habeas corpus for his immediate release from custody, arguing that his continued detention violates the Immigration and Nationality Act ("INA") and the Due Process Clause of the Fifth Amendment. Pet. ¶¶ 73–99; *id.* at 21; Reply, ECF No. 7.

This Court has previously held that a § 1231(a) detainee subject to re-detention after their release pursuant to an OSUP is not limited to a *Zadvydas* claim. *See Nguyen v. Bondi*, No. 3:25-cv-323-KC, 2025 WL 3120516, at *4 (W.D. Tex. Nov. 7, 2025) (citing *Trejo v. Warden of ERO El Paso E. Montana*, --- F. Supp. 3d ----, 2025 WL 2992187, at *6–7 (W.D. Tex. Oct. 24, 2025)). By virtue of the liberty interest obtained through their release, a § 1231(a) re-detainee can also bring a distinct procedural due process claim. *See id.* In *Nguyen*, this Court found a procedural due process violation where a Vietnamese national subject to a final order of removal, who had previously been deemed unremovable to Vietnam and released, was re-detained without an individualized assessment of his flight risk and dangerousness by an Immigration Judge ("IJ"). *See id.* at *5–8. The balance of the *Mathews v. Eldridge* factors weighed in favor of Nguyen because he had a strong liberty interest, the risk of erroneous deprivation was high and easily

4

ameliorated through a bond hearing, there was little evidence that he was a flight risk or danger to the community, and the Government failed to demonstrate that his removal was significantly likely in the reasonably foreseeable future. *See id.* Although the Government had submitted Nguyen's travel document request to Vietnam, it failed to provide an expected timeline for approval, did not attach copies of the submitted request, and the statistics it provided regarding successful removals of Vietnamese nationals did not identify whether any of these individuals, like Nguyen, were pre-1995 refugees. *See id.* at *7. Thus, after approximately three and a half months in detention, this Court ordered Respondents to either provide Nguyen with a bond hearing or release him. *See id.* at *1, 4, 8.

Here, Vang has been detained for over three months, he cannot be removed to Laos, and Respondents have not even submitted his travel document request to Bangladesh or identified any other third countries for removal. *See* Pet. ¶ 58; Status Report, 2d Status Report. And they provide no anticipated timeline for submission or identification of a third country. *See generally* Status Report; 2d Status Report. In *Nguyen*, this Court found that, "[w]hile it may be that Nguyen's removal to Vietnam is now possible, where it was previously impossible, Respondents have not shown that his removal is significantly likely to occur in the reasonably foreseeable future." *See Nguyen*, 2025 WL 3120516, at *7. In Vang's case, Respondents have not provided any information that would even allow the Court to conclude that his removal to Bangladesh or another third country is possible, let alone significantly likely to occur in the reasonably foreseeable future.

Thus, at this time, Respondent's interest in effectuating Vang's removal order is weak. *See id.* at *7–8. And any interest in preventing flight or danger is similarly weak, as Vang was previously released under an OSUP and there is no evidence in the record that he presents a

5

flight risk or committed any crimes or endangered anyone since his release over twenty years ago. *See id.* at *6. The Government's interest in re-detaining Vang is thus outweighed by his strong liberty interest from nearly twenty-one years of liberty in the United States, and the fact that the high risk of erroneous deprivation could be easily ameliorated by a bond hearing. *See id.* at *5–6.

While there is no doubt that Vang is subject to a final order of removal and that Respondents are entitled to remove him from the United States, when they have essentially failed to take any action to effectuate that removal, they cannot continue to detain Vang without providing him with an individualized custody determination.

## III.    CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus, ECF No. 1, is **GRANTED IN PART**. The Court **ORDERS** that, **on or before April 20, 2026**, Respondents shall either: (1) provide Vang with a bond hearing before an IJ, at which the Government shall bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, Vang's continued detention; or (2) release Vang from custody, under reasonable conditions of supervision.

**IT IS FURTHER ORDERED** that, **on or before April 20, 2026**, Respondents shall **FILE** notice informing the Court whether Vang has been released from custody. If Vang has not been released from custody, Respondents shall inform the Court whether and when a bond hearing was held in accordance with the preceding paragraph. Respondents shall further inform the Court, in detail, of the reasons for the IJ's decision.

**There will be no extensions of the April 20, 2026, deadlines.**

**SO ORDERED**.

**SIGNED this 13th day of April, 2026.**

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE